Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1312 | **DATE** | 12/4/2001 |
| **CASE TITLE** | Shannon Goldman vs. Abbott Laboratories, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Defendant's motion to dismiss [6-1] is granted in part and denied in part.** |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC - 5 2001 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | '01 DEC -4 PM 4:25 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON GOLDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 01 C 1312 |
| v. | ) | |
| | ) | Judge Wayne R. Andersen |
| ABBOTT LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

RECEIVED
DEC - 5 2001

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the defendant Abbott Laboratories' motion to dismiss Counts II, III, and IV of the plaintiff's complaint for failure to state a claim upon which relief can be granted or alternatively because Count II fails to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). For the following reasons, the defendant's motion is granted in part and denied in part.

### BACKGROUND

The following factual background is taken from the civil complaint filed in this Court, which, for purposes of this opinion, we assume to be true. Plaintiff Shannon Goldman is a 31-year old woman who currently resides in the state of Connecticut. In May 1995, Goldman consulted her doctor because she believed she was pregnant. To ascertain whether she in fact was pregnant, her doctor administered a test that was manufactured and distributed by defendant Abbott Laboratories, Inc. ("Abbott"). Generally, the test kits manufactured by Abbott are used as

1

a diagnostic tool to detect the presence of a hormone called human chorionic gonadotropin (hCG). Doctors test women for pregnancy by ordering an analysis of their hCG levels. If a patient is pregnant, hCG levels should be elevated, remain elevated and increase during the pregnancy. However, an elevated hCG level in the absence of any other sign of pregnancy is an indicator of potentially very serious conditions, including ectopic pregnancy or a deadly form of cancer called trophoblastic disease. The normal course of treatment for trophoblastic disease is a vigorous regimen of chemotherapy.

When Goldman was given the pregnancy test manufactured by Abbott in May 1995, it generated a positive result. However, the doctors determined that, despite the elevated hCG levels, she was not actually pregnant. Goldman's doctor continued to administer hCG tests and each of them indicated that her levels remained elevated. Her doctor then diagnosed Goldman with an ectopic pregnancy. As a result, a regimen of methotrexate, a form of chemotherapy, was initiated. However, post-chemotherapy tests continued to indicate persistent elevated hCG levels. Subsequently, Goldman was referred to a gynecological oncologist who diagnosed the plaintiff's condition as gestational trophoblast disease. Extensive diagnostic tests were then performed on Goldman, including CT scans of the thorax, abdomen, and chest, pelvic ultrasounds, and an MRI of the pelvis. All of these examinations were negative to the presence of cancer in her body.

According to her complaint, because of the gravity of her apparent condition and what appeared to be Goldman's non-responsiveness to treatment, the gynecological oncologist recommended that she undergo a hysterectomy. After this initial recommendation, Goldman sought a second opinion from a leading trophoblast expert in Boston. Based on her elevated

hCG levels and her failure to respond to chemotherapy, the trophoblast expert also recommended that Goldman undergo a hysterectomy. Shortly thereafter, Goldman acquiesced and the surgery proceeded. The post-surgery pathology report was normal. There was no visible evidence of trophoblastic tumor in Goldman's uterus. Apparently, the hysterectomy had been unnecessary.

In March 2000, Goldman had occasion to speak with Laurence Cole, Ph.D. of the Trophoblastic Center at Yale University. Dr. Cole told Goldman that her positive hCG tests had been false and that, in fact, she never had cancer. Because her uterus was surgically removed, Goldman will never be able to have additional children. Further, according to her complaint, Goldman now faces a substantially increased risk of contracting leukemia and other serious diseases as a result of the allegedly unnecessary chemotherapy treatments.

On February 27, 2001, Goldman filed the instant five count complaint against Abbott. The gist of the plaintiff's complaint is that, as a direct result of Abbott's allegedly defective test kits, all of the plaintiff's diagnoses of ectopic pregnancy and trophoblast disease were false and her hysterectomy and painful chemotherapy treatments were unnecessary. Specifically, Goldman has alleged violations of the Connecticut Product Liability Act and the Connecticut Unfair Trade Practices Act, as well as claims for intentional and negligent infliction of emotional distress.

## DISCUSSION

In considering defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations set forth in the complaint and draw all reasonable inferences in favor of Goldman. *See Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). A motion to dismiss, pursuant to Rule 12(b)(6), will only be granted if it appears that Goldman could not prove any set of facts in

support of her claims entitling her to relief. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In Count II of her complaint, Goldman alleges that Abbott engaged in misrepresentations and/or omissions of material fact regarding the accuracy and reliability of the hCG test kits it manufactured and distributed. Additionally, Goldman alleges that Abbott did not disclose to the medical community information it possessed concerning an available commercial fix which would have eliminated the possibility of false positive hCG levels reported by the Abbott test kits. All of these actions are allegedly violations of the Connecticut Unfair Trade Practices Act (the "CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.* Abbott attacks Count II on two fronts. First, Abbott argues that the CUTPA claim is preempted by the Connecticut Product Liability Act (the "CPLA"), which Goldman asserts in Count I of her complaint. Second, Abbott contends that Goldman has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). As for Counts III and IV, Goldman contends that Abbott is liable for both intentional and negligent infliction of emotional distress. Abbott responds to this by arguing that these counts, like the CUTPA claim, is preempted by the CPLA.

I.  **Preemption**

Count I of Goldman's complaint alleges that the hCG tests kits manufactured and distributed by Abbott were defective in design and that they were sold without adequate warnings to potential consumers. These actions are purported violations of the CPLA. The purpose of the CPLA is to "protect the public from harm caused by defective and hazardous products introduced into the stream of commerce." *Bogrette v. Clark Equip. Co.*, 1998 WL 252354, at *4 (Conn. Super. Ct. May 8, 1998). To emphasize the potency of the remedies made available by the

4

CPLA, the Connecticut General Assembly inserted into the act a provision which the parties and the Connecticut courts have referred to as the "exclusivity" provision. This provision states that:

> A product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm cause by a product.

Conn. Gen. Stat. § 52-572n(a). It is due to this section of the CPLA that the defendant argues Goldman's CUTPA cause of action in Count II is preempted and subject to dismissal.

The Connecticut trial courts that have addressed the preemptive effect of section 52-572n(a) of CPLA are hopelessly divided, and, as of this time, the Connecticut Supreme Court and the Connecticut Appellate Court have not resolved the split in authority. There are basically three competing theories in Connecticut on the subject of the preemptive force of the CPLA on CUTPA claims. First, some Connecticut Superior Courts have taken the view that a CUTPA count is completely barred by the CPLA exclusivity provision and should be stricken. *See, e.g., Leach v. Minnesota Mining & Mfg. Co.*, 1998 WL 83681 (Conn. Super. Ct. 1998); *Hoboken Wood Flooring Corp. v. Torrington Supply Co.*, 606 A.2d 1006 (Conn. Super Ct. 1991). Some Superior Courts have taken the completely opposite position that the CPLA does not preclude CUTPA claims irrespective of how the CUTPA claim is pleaded. *See, e.g., Abbhi v. AMI*, 1997 WL 325850, at *8-9 (Conn. Super. Ct. June 3, 1997) (citing cases). Finally, there are those courts that have found a middle ground between these two polar opposite positions. These courts answer the dilemma posed by section 52-572n(a) with the "functional analysis" test.

As explained by those courts that champion "functional analysis," the test recognizes the "distinction between the issues of manufacture, design, and marketing addressed by the CPLA and the issues of conduct addressed by the CUTPA, while at the same time acknowledging the

5

exclusivity of the CPLA where warranted." *Newinski v. Hill*, Docket No.074906 (Conn. Super. Ct. Jan. 15, 1998). Under the functional analysis test, if the cause of action being pressed is essentially identical in wrongs asserted and in relief sought with that being pursued under the CPLA, then the CUTPA claim is precluded. As a corollary to this rule, a plaintiff who pleads a CUTPA claim along with a CPLA claim must plead separate factual allegations in support of his CUTPA claim. Allegations set forth in the CPLA count, and "incorporated by reference in to the CUTPA count, that are beyond the allegations necessary to support the CPLA count, would be sufficient to allow the court to hold that [the CUTPA claim] is not functionally identical . . . ." *Geissler v. Ford Motor Co.*, 1994 WL 16577, at *2 (Conn. Super. Ct. Jan 13, 1994).

After a careful review of the most recent Connecticut Superior Court precedents on this subject, there appears to be a growing consensus toward the use of the functional analysis test as the best means to resolve issues of preemption between the CPLA and the CUTPA. *See, e.g., Thomas v. Edsan Chem. Co., Inc.*, 2001 WL 950977, at *3 (Conn. Super. Ct. July 24, 2001) (the court has adopted the "functional analysis test when addressing the issue of whether a CUTPA claim may be pleaded in conjunction with a CPLA claim"); *Kristofak v. General Motors Corp.*, 2000 WL 895280, at *3 (Conn. Super. Ct. June 26, 2000) (dismissing CUTPA claim because it was functionally equivalent to a CPLA claim). Accordingly, we will apply the functional analysis test to Count II of Goldman's complaint.

The critical inquiry this Court must undertake in order to apply the functional analysis test is to determine whether Goldman's CPLA claim in Count I and her CUTPA claim in Count II are "essentially identical in wrongs asserted and relief sought." *Bogrette*, 1998 WL 252354 at *4. We find that the wrongs asserted are essentially identical but the relief sought is not identical.

However, before delving into the similarities between the wrongs alleged in the two counts, we must first begin our analysis with the definition of a "product liability claim" provided in the CPLA. According to the statute, a "product liability claim" includes "all claims or actions brought for personal injury . . . caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warning, instructions, *marketing*, packaging or labeling of any product." Conn Gen. Stat. § 52-572m(b) (emphasis added). Goldman has argued that her allegations in Count I of her complaint meet this standard. As a result, the question then becomes whether her allegations in Count II could also be considered as a product liability claim under the CPLA.

A careful reading of Goldman's allegations in Count II indicates that she is in fact raising a product liability-type claim. Specifically, she is asserting that Abbott engaged in a series of misrepresentations and omissions of material fact regarding the accuracy of its test kits and the availability of a commercial fix which would have eliminated the possibility of false positive results. In effect, Goldman is claiming that Abbott's misrepresentations in the *marketing* of its product caused the harm for which she is seeking redress.

However, what separates Count II from Count I is the relief sought in each of these counts. Whereas in Count I Goldman is seeking damages for the injuries and other harms she suffered as a result of the allegedly defective test kits, in Count II Goldman seeks to recover her economic damages stemming from Abbott's alleged misrepresentations and omissions of material fact. Goldman has made a very subtle and clever point here that deserves additional attention. By asserting that she seeks only to recover her economic damages in Count II, she has taken her allegations in that count ostensibly outside the ambit of the CPLA. Because there is no

7

available Connecticut authority on this point, we conclude that, based on the language of both statutes, economic damages arising from the unfair or deceptive trade practices allegedly engaged in by the defendant are distinct and wholly separate from the financial remedies available for damages caused by the product itself under the CPLA. Accordingly, Count II of Goldman's complaint is not preempted by the CPLA, and the motion to dismiss on that ground is denied.

## II       Federal Rule of Civil Procedure 9(b)

Abbott next argues that Count II of the plaintiff's complaint must be dismissed because it fails to satisfy the heightened pleading requirements imposed on cases sounding in fraud by Federal Rule of Civil Procedure 9(b). As an initial step, however, we must first determine whether Rule 9(b) actually applies to the allegations of unfair and deceptive trade practices Goldman has raised in Count II.

As numerous Connecticut courts have held, Rule 9(b) does not govern the pleading of CUTPA claims. *See, e.g., Conntext, Inc. v. Turbotect, Ltd.*, 1998 WL 91067, at *6 n.4 (D. Conn. Feb. 23, 1998) ("[o]nly where common law fraud is being alleged under the guise of a CUTPA claim, must such a claim be alleged in accordance with the particularity requirements of [Rule 9(b)]"; *Green v. Konover Residential Corp.*, 1997 WL 736528, at *7 (D. Conn. Nov. 24, 1997) ("[a]lthough defendants are correct that the Connecticut courts have required CUTPA claims to be pled with particularity, this procedural requirement does not apply in federal court"); *Omega Eng'g, Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1099 (D. Conn. 1995) ("Rule 9(b) . . . does not govern the pleading of CUTPA claims"). The reason for this is quite simple. Unlike fraud, CUTPA does not require proof that the defendant knew of a representation's falsity or that the defendant intended to deceive the plaintiff. *See Cheshire Mortgage Serv., Inc. v. Montes*, 612

A.2d 1130, 1144 (Conn. 1992); *Web Press Servs. Corp v. New London Motors, Inc.*, 525 A.2d 57, 67-68 (Conn. 1987). Because CUTPA claims do not necessarily allege such bad behavior, they are less serious charges than fraud. *See Omega Eng'g*, 908 F. Supp at 1100. Therefore, there is less need for a heightened pleading requirement to protect against "baseless allegations that might harm defendants' reputations." *Id.* Accordingly, we find that Rule 9(b) does not apply to Count II of Goldman's complaint and that she has adequately pled a CUTPA count under Federal Rule of Civil Procedure 8(a).

### III. Intentional and Negligent Infliction of Emotional Distress

In Counts III and IV of her complaint, Goldman alleges that Abbott is liable for the extreme emotional anxiety she has suffered over the last few years because of Abbott's actions with regard to the manufacture and distribution of its hCG tests. In response to these claims, Abbott contends these common law causes of action are also preempted by the CPLA. We agree with the defendant on this score.

As was discussed in detail above, the exclusivity provision of the CPLA states that "a products liability claim . . . shall be in lieu of all other claims against product sellers, including actions in negligence, strict liability and warranty for harm caused by the product." Conn. Gen. Stat. § 52-572n(a). As the Connecticut Superior Court has explained, "[i]f common law claims were allowed against [a defendant] encompassing allegations of the same wrongful conduct and the same claims for relief which could be procured against [the defendant] on a products liability claim, the exclusivity provision of the act would be defeated." *Skelton v. Chemical Leaman Tank Lines, Inc.*, 1996 WL 290938, at *3 (Conn. Super. Ct. May 13, 1996). A quick examination of the causes of action explicitly barred by section 52-572n(a) reveals that they are all common law

actions which can be brought against a manufacturer of a product for harms proximately caused by that product. As the list of actions in section 52-572n(a) is not exclusive, we conclude that intentional or negligent infliction of emotional distress, especially as pled by the plaintiff in her complaint, can similarly be construed as an action to recover for harms caused by the defendant's product.

The "functional analysis" test discussed at length above provides further credence to this conclusion. In Counts III and IV of her complaint, Goldman has explicitly incorporated by reference all of the preceding allegations of her complaint, including the CPLA and CUTPA counts. In fact, she did not provide any new factual allegations to support these additional causes of action. As a result, the wrongs asserted in all of these counts are identical. However, what differentiates Counts III and IV from Count II is that the remedies she seeks for infliction of emotional distress are virtually identical to the relief she seeks in her CPLA count. In the CPLA count as well as in Counts III and IV, she is requesting "all damages reasonably and proximately caused by Defendant's conduct" in manufacturing, distributing, promoting, and marketing the hCG test kits. Therefore, because Counts III and IV are functionally equivalent to the CPLA claim in Count I, they are preempted by the CPLA count and hereby dismissed. Nevertheless, we will permit Goldman to amend her complaint to include the emotional distress allegations in her CPLA count if that is what she wishes to do.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Count II of the plaintiff's complaint for failure to state a claim upon which relief can be granted is denied. The defendant's motion to dismiss Counts III and IV is granted. The plaintiff is granted leave to amend her

complaint to include her allegations of infliction of emotional distress as part of Count I.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: _December 4, 2001_